UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| LAURIE MACKENZIE, | ) | CASE NO. 1:17CV82 |
| | ) | |
| | ) | JUDGE DONALD C. NUGENT |
| Plaintiff, | ) | Magistrate Judge George J. Limbert |
| | ) | |
| v. | ) | |
| | ) | |
| NANCY BERRYHILL[1], | ) | |
| COMMISSIONER OF SOCIAL | ) | REPORT AND RECOMMENDATION |
| SECURITY ADMINISTRATION, | ) | OF MAGISTRATE JUDGE |
| | ) | |
| Defendant. | ) | |

Plaintiff Laurie MacKenzie ("Plaintiff") requests judicial review of the final decision of the Commissioner of Social Security Administration ("Defendant") denying her application for disability insurance benefits ("DIB"). ECF Dkt. #1. In her brief on the merits, filed on May 1, 2017, Plaintiff asserts that the administrative law judge ("ALJ") failed to: properly weigh the opinion of her treating physician, Dr. Rozman; properly weigh the opinion of examining physician Dr. Cremer; and failed to provide a residual functional capacity ("RFC") that was supported by substantial evidence. ECF Dkt. #13. On May 31, 2017, Defendant filed a brief on the merits. ECF Dkt. #14. On June 14, 2017, Plaintiff filed a reply brief. ECF Dkt. #15.

For the following reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.

## I.    FACTUAL AND PROCEDURAL HISTORY

On November 22, 2013, Plaintiff protectively filed an application for DIB alleging disability beginning August 29, 2013 due to a bulging disc in her lower back, breast cancer in remission, left breast mastectomy and reconstruction, diverticulosis, digestive issues, intestinal issues,

---

[1]On January 23, 2017, Nancy A. Berryhill became the acting Commissioner of Social Security, replacing Carolyn W. Colvin.

hysterectomy, double hernia, hypertension, and depression.. ECF Dkt. #11 at 152, 186.[2]  Plaintiff's application was denied initially and upon reconsideration.  *Id.* at 104-115.  Following the denial of her application, Plaintiff requested an administrative hearing, and on September 29, 2015, an ALJ conducted the hearing and accepted the testimony of Plaintiff, who was represented by counsel, and a vocational expert ("VE").  *Id.* at 33, 121.  On October 20, 2015, the ALJ issued a decision denying Plaintiff's application for DIB.  *Id.* at 17-27.  Plaintiff requested a review of the hearing decision, and on November 14, 2016, the Appeals Council denied review.  *Id.* at 1-7.

On January 12, 2017, Plaintiff filed the instant suit seeking review of the ALJ's decision. ECF Dkt. #1.  Plaintiff filed a brief on the merits on May 1, 2017.  ECF Dkt. #13.  On May 31, 2017, Defendant filed a merits brief.  ECF Dkt. #14.  Plaintiff filed a reply brief on June 14, 2017.  ECF Dkt. #15.

**II**.  **ALJ'S DECISION**

In his decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since August 29, 2013, her alleged onset date.  ECF Dkt. #11 at 19.

The ALJ found that Plaintiff had the severe impairments of lumbar degenerative disc disease ("DDD") with radiculitis; diverticulosis; and obesity.  ECF Dkt. #11 at 19.  He further found that these impairments, individually or in combination, did not meet or equal any of the Listing of Impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("Listings").  *Id*. at 18-21.

The ALJ thereafter determined that Plaintiff had the RFC to perform sedentary work with the following limitations: an ability to sit for five minutes every hour of standing or walking; frequent stooping and balancing on uneven surfaces; occasional kneeling, crouching and crawling and climbing of ramps or stairs; never climbing ladders, ropes or scaffolds; an environment that had only occasional vibration; and working in a place in close proximity to a restroom, such as you

---

[2]All citations to the transcript refer to the page numbers assigned when the transcript was filed in the CM/ECF system rather than the page numbers assigned when the transcript was compiled.  This allows the Court and the parties to easily reference the transcript as the page numbers of the .PDF file containing the transcript correspond to the page numbers assigned when the transcript was filed in the CM/ECF system.

would find in an office setting where the workstation is on the same floor as the bathroom.  *Id*. at 22.

The ALJ went on to find that based upon the RFC that he determined for Plaintiff and the VE's testimony, Plaintiff could perform her past relevant work as an inside sales manager and marketing manager.  ECF Dkt. #11 at 26-27. He therefore found that Plaintiff was not under a disability as defined in the Social Security Act from August 29, 2013, through the date of his decision.  *Id*. at 27.

### III.  STEPS TO EVALUATE ENTITLEMENT TO SOCIAL SECURITY BENEFITS

An ALJ must proceed through the required sequential steps for evaluating entitlement to social security benefits.  These steps are:

1.  An individual who is working and engaging in substantial gainful activity will not be found to be "disabled" regardless of medical findings (20 C.F.R. §§ 404.1520(b) and 416.920(b) (1992));

2.  An individual who does not have a "severe impairment" will not be found to be "disabled" (20 C.F.R. §§ 404.1520(c) and 416.920(c) (1992));

3.  If an individual is not working and is suffering from a severe impairment which meets the duration requirement, see  20 C.F.R.  § 404.1509 and 416.909 (1992), and which meets or is equivalent to a listed impairment in 20 C.F.R. Pt. 404, Subpt. P, App. 1, a finding of disabled will be made without consideration of vocational factors (20 C.F.R. §§ 404.1520(d) and 416.920(d) (1992));

4.  If an individual is capable of performing the kind of work he or she has done in the past, a finding of "not disabled" must be made (20 C.F.R. §§ 404.1520(e) and 416.920(e) (1992));

5.  If an individual's impairment is so severe as to preclude the performance of the kind of work he or she has done in the past, other factors including age, education, past work experience and residual functional capacity must be considered to determine if other work can be performed (20 C.F.R. §§ 404.1520(f) and 416.920(f) (1992)).

*Hogg v. Sullivan*, 987 F.2d 328, 332 (6th Cir. 1992).  The claimant has the burden to go forward with the evidence in the first four steps and the Commissioner has the burden in the fifth step. *Moon v. Sullivan*, 923 F.2d 1175, 1181 (6th Cir. 1990).

### IV.  STANDARD OF REVIEW

Under the Social Security Act, the ALJ weighs the evidence, resolves any conflicts, and makes a determination of disability.  This Court's review of such a determination is limited in scope

by §205 of the Act, which states that the "findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. §405(g). Therefore, this Court's scope of review is limited to determining whether substantial evidence supports the findings of the Commissioner and whether the Commissioner applied the correct legal standards. *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990).

The substantial-evidence standard requires the Court to affirm the Commissioner's findings if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Cole v. Astrue*, 661 F.3d 931, 937, citing *Richardson v. Perales*, 402 U.S. 389, 401, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971) (citation omitted). Substantial evidence is defined as "more than a scintilla of evidence but less than a preponderance." *Rogers v. Comm'r of Soc. Sec.,* 486 F.3d 234 (6th Cir. 2007). Accordingly, when substantial evidence supports the ALJ's denial of benefits, that finding must be affirmed, even if a preponderance of the evidence exists in the record upon which the ALJ could have found plaintiff disabled. The substantial evidence standard creates a "'zone of choice' within which [an ALJ] can act without the fear of court interference." *Buxton v. Halter*, 246 F.3d 762, 773 (6th Cir.2001). However, an ALJ's failure to follow agency rules and regulations "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Cole, supra*, citing *Blakely v. Comm'r of Soc. Sec.*, 581 F.3d 399, 407 (6th Cir.2009) (citations omitted).

## V.    RELEVANT MEDICAL EVIDENCE

The undersigned summarizes only the evidence relevant to Plaintiff's claims before the Court which are primarily her lumbar DDD with radiculitis and diverticulosis. Medical evidence concerning other impairments and conditions is included only where relevant or for background information.

In 2008, Plaintiff underwent a left breast mastectomy and reconstruction. ECF Dkt. #11 at 600-603. In 2008, 2009 and 2011, Plaintiff underwent operations for breast reconstructions. *Id*. at 679-680, 701-702, 714-715.

-4-

On August 9, 2011, Plaintiff's primary physician, Dr. Rozman, referred her to Dr. Furey of University Hospital Department of Orthopaedics for her six-month history of low back pain. ECF Dkt. #11 at 495. Dr. Furey noted upon examination that Plaintiff had a stable gait, and painless motion of both hips with intact strength. *Id.* He indicated that her x-rays showed no abnormalities in the lumbar spine except preserved lordosis with very mild degenerative changes at L5-S1. *Id.* He diagnosed low back pain without radiculopathy and indicated that she was not a candidate for surgery but could benefit from a good exercise program. *Id.* at 496.

On November 7, 2011, Plaintiff presented to Dr. McIntyre at University Hospitals Pain Medicine Division for her low back pain. ECF Dkt. #11 at 498. He noted that Plaintiff had no precipitating event for the back pain and she indicated that it was constant and made her feel unsteady on her feet although she had no radiation to her legs. *Id.* She reported that the pain was worse when she stood for long periods of time or when she arose from a seated position. *Id.*

Dr. McIntyre noted that Plaintiff's MRI results showed a degenerated disc at the L5-S1 level and her physical examination showed a stable gait, reduced range of motion in the lumbar spine, and tenderness to palpation over the paravertebral musculature in the lumbar area. ECF Dkt. #11 at 499. He diagnosed lumbar disc degeneration and lumbosacral sponylosis. *Id.* He recommended physical therapy and prescribed her Tramadol. *Id.* He also indicated that Plaintiff was a candidate for epidural steroid injections. *Id.*

On January 4, 2012, Plaintiff was diagnosed with DDD and she received a steroid injection at L4-L5. ECF Dkt. #11 at 264, 359.

A September 11, 2012 CT scan of the abdomen showed scattered diverticula without evidence of diverticuliltis. ECF Dkt. #11 at 271, 370.

On September 17, 2012, Plaintiff had a MRI of the spine that showed posterior disc bulge with mild degenerative facet changes at L4/L5 which contributed to mild overall central canal narrowing. ECF Dkt. #11 at 254. It also showed mild to moderate left-sided neuroforaminal narrowing at this level. *Id.* The MRI further indicated a mild posterior disc bulge at L3/L4 without significant central canal or neuroforaminal narrowing, and a nonspecific focus of increased signal on the T2 of the posterior right lobe of the liver. *Id.*

November 27, 2012 progress notes from Dr. Rozman indicated that Plaintiff reported that she was "good" and was taking less pain medications. ECF Dkt. #11 at 239.

On December 12, 2012, Dr. Rozman wrote a letter indicating that Plaintiff's condition had improved such that she could work part-time in an office setting and part-time at home with the anticipation that Plaintiff would be able to increase her work hours in the office and traveling and would be able to taper her use of narcotic analgesics. ECF Dkt. #11 at 238.

On September 24, 2013, Plaintiff presented to Dr. Rozman complaining of worsening back pain, difficulty standing for long periods of time, and a feeling that something went wrong with her hernia surgery as she felt "something there" and had frequent nausea, occasional vomiting and daily loose stools. ECF Dkt. #11 at 229. A physical examination showed clear lungs and a soft abdomen with mildly diffuse tenderness. *Id.* at 231. Dr. Rozman's impressions were continued abdominal pain and low back pain for which he ordered labs and a MRI of the lumbosacral spine. *Id.*

Plaintiff underwent pain management for her lumbar conditions with Dr. Yang and Dr. Bressi at Summit Pain Specialists, Inc. ("Summit"). ECF Dkt. #11 at 300-346. At her initial visit on April 12, 2012 with Dr. Bressi, Plaintiff complained of throbbing, aching low back pain which began early in 2011. ECF Dkt. #11 at 344. She reported that she had undergone physical therapy and injections in the past and they only gave her short-term relief. *Id.* Dr. Bressi noted the November 2011 MRI which showed a L4-L5 diffuse disc bulge without significant canal or foraminal stenosis. *Id.* He also noted partial sacralization of the L5 vertebral body. *Id.* Upon examination, Dr. Bressi found that Plaintiff's left sacroiliac joint was displaced and Plaintiff was restricted in forward bending. *Id.* He noted that Plaintiff was very tender at L4-L5 to palpation, with some atrophy to the back muscles around the L4-L5 center. *Id.* He diagnosed lumbar DDD with radiculitis, prescribed her medications, noted that she was already on an exercise program, and he scheduled injections. *Id.* at 344-345. He commented that he thought that "we can keep her very stable and functional and increase her function actually." *Id.* at 345.

Examinations and treatment for pain management throughout 2012-2013 noted that Plaintiff was very tender to palpation at the L4-L5 levels with atrophy of her back muscles in April of 2012 and she had mild to moderate pain levels on palpation to midline from May of 2012 through

November of 2012 with limited range of motion. *Id.* at 324, 327, 330, 343-346, 469.  Dr. Yang also noted from January of 2013 through October of 2013, Plaintiff exhibited mild to moderate severe tenderness, moderate increased tightness, decreased range of motion at the lumbar/sacral paraspinals, and increased pain on lumbar extension. *Id.* at 304, 308, 311, 317, 321.  She received medications and injections. *Id.*

Progress notes dated May 17, 2013 from Summit show that Plaintiff presented for her low back pain, but stated that her pain was stable and her medication regimen was controlling her pain and allowing her to work.  ECF Dkt. #11 at 314, 460.  It was noted that while her chronic lumbar spine pain was stable and Plaintiff was able to function at home and at work, Dr. Yang sent a restriction to Plaintiff's employer that Plaintiff have frequent position changing and not be able to return to work sooner than after her normal breaks. *Id.* at 315.

July 1, 2013 progress notes from Summit indicate that Plaintiff presented for her low back pain and she stated that her pain was improving and her current medication regimen was working to control her pain.  ECF Dkt. #11 at 310-311, 457.  She indicated that her medication regimen was allowing her to maintain her employment. *Id.* at 311, 457.  It was noted that her chronic spine pain was improving, although she still had significant muscle tightness. *Id.*  Dr. Yang refilled her medications and a TENS unit for her muscle spasms. *Id.*

September 6, 2013 progress notes from Summit indicate that Plaintiff presented for her back pain and complained that her pain was increasing and her current medication regimen was not working to control her pain.  ECF Dkt. #11 at 307.  Physical examination showed moderate tenderness and tightness at lumbar/sacral paraspinals with decreased range of motion. *Id.* at 308.  Dr. Yang refilled her medications and scheduled lumbar epidural injections. *Id.*

September 24, 2013 progress notes from Dr. Rozman show that Plaintiff presented complaining of low back pain that was getting worse and made it difficult for her to stand for long periods of time.  ECF Dkt. #11 at 391.  Plaintiff reported that she was in a pain management progress and she declined back surgery. *Id.*  She also felt that something went wrong with her hernia surgery. *Id.* Dr. Rozman's physical examination revealed no distention of the abdomen and that it was soft with mild diffuse tenderness. *Id.* at 393.  He ordered labs, a CT scan of the abdomen, and

a MRI of the lumbar spine. *Id*. at 393. The CT scan showed no new nodules in the liver and diverticulitis of the colon without evidence of acute diverticulitis, although colitis was not excluded. *Id.* at 416.

On October 18, 2013, Plaintiff presented to Dr. Rozman for a colonoscopy, which showed multiple small and large-mouth diverticula in the entire colon and diverticulitis was diagnosed. ECF Dkt. #11 at 258, 423.

October 28, 2013 progress notes from Summit show that Plaintiff presented with low back pain that was constant and sharp and she was out of her medications three days early. ECF Dkt. #11 at 302, 450. Physical examination showed a musculoskeletal examination positive for myalgia and arthralgia, with normal sensation, but decreased range of motion and negative straight leg raising. *Id*. at 303-304. Plaintiff complained that she had significant increased pain with short standing at five minutes and it was noted that she was currently employed but her current pain treatment plan was not working to control her pain. *Id*. at 303. She was diagnosed with sacroilitis, lumbar DDD and lumbar/thoracic radiulitis. *Id*. at 304. It was opined that since her last visit, Plaintiff was showing signs of lumbar stenosis and right sacroiliac joint arthropathy. *Id*. at 304. She was scheduled for injections, Relafen was prescribed, and her Norco was refilled, but she was warned about using more than prescribed. *Id.*

January 3, 2014 notes from Dr. Rozman indicated that Plaintiff presented with the same low back pain that occurred after standing for three minutes and with prolonged sitting and carrying of objects. ECF Dkt. #11 at 388. Physical examination showed clear lungs, diffuse minimal abdominal tenderness, and decreased mobility of the lumbar spine. *Id*. at 388-389. Dr. Rozman completed Plaintiff's long-term disability form and told her to increase her exercise and lose weight. *Id*. at 390.

Progress notes from Dr. Yang dated January 20, 2014 indicate that Plaintiff presented for low back pain and complained of constant significant pain mostly at the left sacroiliac area with referred pain to the left hip. ECF Dkt. #11 at 446. Plaintiff reported that the medication regimen was not controlling her pain and she did not undergo the steroid injection due to insurance issues. *Id.* Physical examination showed moderate tenderness at the lumbar/sacral paraspinals, moderate increased tightness at the lumbar/sacral paraspinals and left sacroiliac joint, with decreased range

motion at the lumbar/sacral paraspinals. *Id*. at 446. Dr. Yang diagnosed lumbar disc degeneration and lumbar radiculitis, and he noted that Plaintiff had a strong component of left sacroiliac joint arthropathy that was uncontrolled with medications. *Id*. He started Plaintiff on Mobic and refilled her other medications, and he ordered a check of insurance preauthorization for a sacroiliac joint injection. *Id*.

Dr. Yang saw Plaintiff for her back pain on March 17, 2014. ECF Dkt. #11 at 441. He noted moderate tenderness, increased tightness and decreased motion at the lumbar/sacral paraspinals upon examination, with increased pain with back extension. *Id*. at 443. He diagnosed lumbar disc degeneration and lumbago, and noted that Plaintiff had a strong component of lumbar facet arthropathy or stenosis. *Id*. He started a trial lumbar epidural injection and referred Plaintiff for physical therapy twice a week for two weeks. *Id*. He also continued her pain medications. *Id.*

April 28, 2014 progress notes from Dr. Rozman show that Plaintiff reported that her disability from work was approved at 65% and she had gotten injections with mild relief. ECF Dkt. #11 at 560. She was planning on trying water therapy. *Id.* Dr. Rozman noted that Plaintiff's back pain was better with current medications, increased exercise and weight loss. *Id.* at 562.

May 12, 2014 progress notes from Dr. Yang show that Plaintiff presented for back pain and stated that while the injections she had on April 3 and April 10 of 2014 helped, she still had constant significant pain, although she was able to walk and stand more. ECF Dkt. #11 at 429, 432, 436, 521, 522 She reported that her pain medication regimen was working and she was going to start water therapy. *Id*. It was noted that Plaintiff was working and her current treatment plan was controlling her pain and allowing her to work. *Id.* Physical examination showed moderate tenderness at the lumbar/sacral paraspinals and right sacroiliac joint, with moderate increased tightness at the lumbar/sacral paraspinals and decreased range of motion, but no negative straight-leg raising. *Id*. at 430. Dr. Yang diagnosed sacrolitis, DDD of the lumbar spine and lumbago. *Id.* He noted that Plaintiff had a strong component of right sacroiliac joint arthropathy. *Id.* He prescribed Mobic and refilled her other medications. *Id*.

July 7, 2014 progress notes from Dr. Yang show that Plaintiff presented complaining that her lumbosacral pain had increased significantly since the last visit and her current pain regimen was

not working. ECF Dkt. #11 at 524. Physical examination showed moderate tenderness at the lumbar/sacral paraspinals and right sacroiliac joint, with moderate increased tightness at the lumbar/sacral paraspinals, decreased range of motion and increased back pain with lumbar extension, but no negative straight-leg raising. *Id*. at 529. Dr. Yang diagnosed sacrolitis, DDD of the lumbar spine and lumbago. *Id*. He noted that Plaintiff had components of facet arthropathy. *Id*. He discontinued Mobic, prescribed Diclofenac and Baclofen, and limited Norco to 4 times per day. *Id*. Dr. Rozman's July 22, 2014 progress notes show that Plaintiff presented with continued back pain if she stood for 3-4 minutes or sat for 1-2 hours and she stated that it was only relieved by lying down. ECF Dkt. #11 at 556. Plaintiff told Dr. Rozman that she was definitely not able to perform the duties outlined in the "light duty" category because of her pain. *Id*. Dr. Rozman's physical examination showed that her back was nontender, but he diagnosed chronic low back pain that was severe enough that she could not perform light duty. *Id*. at 559. He recommended a new pain management doctor. *Id.*

Dr. Yang's August 27, 2014 progress notes show that Plaintiff presented for back pain and indicated that the pain was still significant and her current pain regimen was not working. ECF Dkt. #11 at 528. Dr. Yang discontinued Mobic and ordered a check of preauthorization of insurance for a steroid injection. *Id*. at 525.

October 3, 2014 progress notes from Dr. Rozman show that Plaintiff presented for severe low back pain. ECF Dkt. #11 at 552. She indicated that she was changing her pain management clinic and she was taking less pain medications overall. *Id.* She was doing water therapy and felt great in the water, but she had increased pain after the sessions. *Id.* She was depressed that she could not work and felt like she was not making progress. *Id.* Dr. Rozman recommended a psychological consultation. *Id*. at 555.

October 29, 2014 progress notes from Dr. Geiger at Summit show that Plaintiff reported that her pain was still significant and the injections did not help. ECF Dkt. #11 at 532. Physical examination showed lumbar spine pain on palpation, with no muscle tightness or spasm, and limited range of motion. *Id*. at 430. Dr. Geiger diagnosed sacrolitis and DDD of the lumbar spine. *Id.* at

533.  He continued her medications and started Plaintiff on Phenergan for the nausea she reported from taking Norco.  *Id.*

MRI results of Plaintiff's lumbar spine dated November 5, 2014 showed that there was a mild interval increase in the moderate degenerative disc space narrowing and degenerative endplate change at the L4-L5 level.  ECF Dkt. #11 at 518, 570.  The MRI results also showed that Plaintiff had stable disc bulging at L4-L5 and left-sided hypertrophy, contributing to stable moderate left foraminal encroachment*.  Id.*

Dr. Geiger's December 23, 2014 notes showed that Plaintiff presented for back pain and indicated that the treatment plan was not controlling her pain.  ECF Dkt. #11 at 535, 588.  She reported constant, deep, diffuse, moderately intense pain across her lower back with no radiation. *Id.*  She state that she could only stand for 10-15 minutes before her pain becomes intense and she has to sit down to alleviate the pain.  *Id*.  Physical examination showed lumbar spine pain on palpation, with no muscle tightness or spasm, and limited range of motion.  *Id.*  Dr. Geiger diagnosed DDD of the lumbar spine, continued her medications, and discussed lumbar joint injections to help the pain.  *Id*. at 536.  It was noted that Plaintiff had an appointment with Dr. Furey for a surgical consultation.  *Id.* at 588.

On January 7, 2015, Plaintiff underwent a lumbosacral spine MRI which showed mild discogenic degenerative changes at L5-S1 with no spondylolisthesis or abnormal movement.  ECF Dkt. #11 at 538.

February 10, 2015 notes from Dr. Rozman indicate that Plaintiff presented complaining of nausea, vomiting and low back pain.  ECF Dkt. #11 at 549.  She reported that she was not a candidate for back surgery, she was not doing water therapy or physical therapy, and she was not receiving injections.  *Id*.  Dr. Rozman ordered labs.  *Id.* at 551.

February 18, 2015 progress notes from Dr. Geiger showed that she presented with throbbing and aching back pain and physical examination showed pain on palpation of the lumbar spine, with no muscle spasm or tightness, limited range of motion on flexion and radicular pain.  ECF Dkt. #11 at 579-580. Plaintiff reported that medications were providing some relief but she was not doing well and her insurance denied lumbar facet injections.  *Id.* at 580.  She complained that her back pain

-11-

worsened upon standing for more than 5-10 minutes and leaning on a chair and laying down relieved the pain. *Id*. at 583. Plaintiff reported that she went to see Dr. Furey and he told her that surgery was not indicated. *Id*. Dr. Geiger diagnosed lumbar facet arthropathy, lumbar spondylosis, lumbar disc displacement and lumbar disc degeneration. *Id.* at 584. He continued her medications and ordered lumbar facet joint injections. *Id.*

On February 24, 2015, Plaintiff presented to Dr. Rozman complaining of back pain. ECF Dkt. #11 at 546. She indicated that she had a urinary tract infection recently. *Id*. Upon examination, Dr. Rozman reported that Plaintiff had tender midline lower back tenderness with decreased range of motion especially on forward flexion. *Id*. at 548. He diagnosed chronic low back pain and encouraged Plaintiff to continue with physical therapy, exercises and injections. *Id*. He noted that his goal was to improve her pain so she could return to work. *Id.*

On the same date, Dr. Rozman completed a RFC questionnaire for Plaintiff, indicating that he had been treating her two to four times per year for the past ten years. ECF Dkt. #11 at 540, 731. Dr. Rozman indicated Plaintiff's diagnoses as low back pain, breast cancer and hypertension. *Id.* He noted her prognosis as fair. *Id*. He identified the MRI and Plaintiff's decreased range of motion as the clinical findings supporting Plaintiff's impairment. *Id.* He also identified a reduced range of motion, abnormal gait, tenderness, muscle spasm, muscle weakness, gastritis, weight change and impaired sleep as positive objective signs. *Id*.

Dr. Rozman opined that Plaintiff's pain would be severe enough to constantly interfere with her attention and concentration to perform even simple work tasks. ECF Dkt. #11 at 541, 732. He concluded that her impairments would last or be expected to last at least 12 months, she could walk less than 1 block without rest or severe pain, she could sit up to 45 minutes at a time, stand up to 15 minutes at a time, and could sit and stand/walk less than 2 hours total per 8-hour workday. *Id*. at 541-542, 731-733. He explained that Plaintiff needed to lie down during the workday if she had pain and would have to take unscheduled breaks frequently. *Id*. He further opined that Plaintiff could occasionally lift less than ten pounds and could never lift more, she could never crouch/squat or climb ladders, and she could rarely twist, stoop or climb stairs. *Id*. at 543, 734. Dr. Rozman

opined that Plaintiff would have good and bad days and she would be absent from work more than 4 days per month due to her symptoms or treatment. *Id.*

Plaintiff underwent an independent medical examination on April 14, 2015 by Dr. Cremer. ECF Dkt. #11 at 722. He reviewed Plaintiff's medical history, including her abdomen surgeries, mastectomy, and back pain. *Id*. at 723. He noted that Plaintiff tried injections, physical therapy, ergonomic adjustments at work, and a TENS unit, but they were unsuccessful. *Id*. He also indicated that she was participating in aquatic therapy, which provided only temporary relief, and she was taking oral analgesics but was concerned about long-term use of them. *Id*. Dr. Cremer also noted that Plaintiff was taking Hydrocodone four times a day but was weaning off of that. *Id*. at 724.

Upon physical examination, Dr. Cremer found that Plaintiff was able to sit for the complete intake questionnaire, which lasted 20 minutes, and she was able to sit for the 30-minute interview with only a few position changes. ECF Dkt. #11 at 727. He noted a slight increase in lumbar lordosis, focal tenderness in the midline at L4, no spasm, no trigger points, increased pain on lumbar flexion, hypersensitive sensation on the left, and intact lower extremity range of motion. *Id.* He further found that Plaintiff's right upper extremity was intact, and her left shoulder had positive impingement signs with active flexion. *Id.*

Based upon his examination and review of Plaintiff's medical records, Dr. Cremer opined that while Plaintiff's pain was described as debilitating and affecting her daily living activities, no clear etiology from a physiologic standpoint explained the severity of the impairment as Plaintiff described. ECF Dkt. #11 at 728. He stated that, "[r]ange of motion is significantly limited in the lumbar spine without anatomic correlate noted on imaging." *Id*. He further opined that

> Based on the available information, including the surveillance information, this individual is capable of functioning at a sedentary level at a minimum of 30 hours per week. Restrictions would include a maximum of 30 minutes sitting and 10 minutes standing at any one time, alternating positions. No lifting should be performed from below knee level or above shoulder level. Carrying more than 10 pounds is not currently recommended based on the available information. Lifting is additionally restricted based on evidence of impingement of the left shoulder seen on physical examination. The left arm should not be used for recurrent pushing and pulling. Lifting materials is limited due to compromised abdominal muscle quality, clearly noted in the record and on physical examination. On occasion this individual may need to assume a supine position to relieve her pain but they should occur no more than 2-3 times in a 6 hour day for 5 minutes.

*Id.* at 728-729.

April 15, 2015 progress notes from Dr. Geiger show that Plaintiff presented with aching back pain and physical examination showed pain on palpation of the lumbar spine, with no muscle spasm or tightness, limited range of motion on flexion and radicular pain.  ECF Dkt. #11 at 579-580. Plaintiff reported that medications were providing some relief but her insurance denied lumbar facet injections.  *Id.* at 580.  Dr. Geiger diagnosed lumbar facet arthropathy, lumbar spondylosis and lumbar disc degeneration and continued her medications.  *Id.* at 581.

On June 10, 2015, Plaintiff followed up with Dr. Geiger for her intense and throbbing back pain.  ECF Dkt. #11 at 576.  She was participating in aqua therapy which helped her pain and her medications were helping as well.  *Id.* at 577.  Physical examination showed pain on palpation of the lumbar spine, with no muscle spasm or tightness, limited range of motion on flexion and radicular pain.  *Id.* at 578.  Dr. Geiger diagnosed lumbar facet arthropathy, lumbar spondylosis and lumbar disc degeneration.  *Id.*

June 15, 2015 progress notes from Dr. Rozman indicate that Plaintiff's back pain was "awful" and she could not do anything.  ECF Dkt. #11 at 590.  She was participating in water jogging twice a week but complained that her weight had increased.  *Id.* at 592.  Physical examination was not remarkable.  *Id.*

July 28, 2015 progress notes from Dr. Louwers at Summit show that Plaintiff presented for low back pain.  ECF Dkt. #11 at 573.  Physical examination showed tenderness over the left lumbar paraspinal  that was worse with extensions and tight paraspinals and hamstrings.  *Id.* He noted that Plaintiff's prior MRI showed some mild facet arthropathy in the L3-5 range but no significant disc degeneration or foraminal impingement.  *Id.* Dr. Louwers diagnosed mild lumbar spondylosis, myofascial pain and mild facet arthropathy.  *Id.* at 574.  He started Plaintiff on Mobic and Baclofen discontinued Norco as he did not believe that Plaintiff should be on long-term opioid medications. *Id.*  He noted that Plaintiff "has very little actual pathology in her spine."  *Id.*  He gave her specific exercises to try and recommended facet injections or medial branch blocks.  *Id.*  Dr. Louwers noted that Plaintiff told him that she was taking Ultram from her primary care physician and he advised her

that she should not be taking pain medications outside of Summit and if it happened again, she would be discharged from the practice. *Id.*

On September 3, 2015, Dr. Rozman noted that Plaintiff's physical status remained "about the same" as he indicated in his February 24, 2015 RFC questionnaire. ECF Dkt. #11 at 735. He opined that her activities were still limited by pain and she was continuing to follow up with a pain management physician. *Id.*

## VI.    RELEVANT TESTIMONIAL EVIDENCE

Plaintiff testified at the time of the ALJ hearing that she was married with no children and had a valid driver's license, although she drove only twice a month. ECF Dkt. #11 at 38. She testified that she started having back pain in 2006 or 2007 and it became progressively worse over the years. ECF Dkt. #11 at 47. She started treating with a pain management specialist in 2013 and was continuing to treat with him to get spinal injections, Oxycodone, muscle relaxers, anti-inflammatories, and a TENS unit. *Id.* at 48-49. Plaintiff reported that she had participated in water therapy, but had stopped a couple of months prior because they wanted her to be more aggressive, but it hurt her rotator cuff. *Id.* at 50-51. She explained that none of these therapies or medications helped because while they helped temporarily, nothing helped the pain when she had to stand for more than 5 or 10 minutes. *Id.* at 51. She testified that her doctor told her back surgery was not warranted and she tried back braces, but they bothered her because they wrapped around the abdomen which was sensitive due to prior abdomen surgeries. *Id.* at 52.

When asked to describe how her back condition interfered with her ability to work, Plaintiff explained that she could not stand longer than 5 or 10 minutes without having severe spasms that require her to lie down. ECF Dkt. #11 at 55. She testified that she could walk 3 houses down and then has to return home. *Id.* She indicated that she cannot sit for long periods of time and can sit for a couple of hours before she has to stand. *Id.* She estimated that she can lift five pounds, but she cannot bend over and lift anything. *Id.* She reported that her back pain was constant unless she was lying down and it was worse when she was standing and leaning forward. *Id.* at 56. She testified that she spent 85% to 90% of the day lying down. *Id.* at 57. She can empty the dishwasher, put food on the stove for a quick meal, and can transfer laundry from the front load washer to the front load

-15-

dryer. *Id*. at 57.  She cannot sweep the house since she became totally disabled as her pain got progressively worse. *Id*. at 58-59.  When asked if she remembered telling the psychologist at the examination that she swept three times per week, she explained that he misunderstood her because she meant that she could sweep the cat litter off the floor with a handheld sweeper because she could kneel down while doing that. *Id*. at 59.

Plaintiff further testified that she did a lot of research on the computer, like reading current events, and she watches television lying down.  ECF Dkt. #11 at 59-60.  She also reads books. *Id*.

When asked if the ALJ should consider any other conditions that limited her ability to work, Plaintiff mentioned her abdominal surgeries and the side effects from her total hysterectomy.  ECF Dkt. #11 at 61.  Upon questioning from her attorney, Plaintiff also described her flare ups every other month from diverticulosis, which causes constant diarrhea and can cause infection and dehydration. *Id*. at 61-62. She testified that she uses the bathroom 3 or 4 times per day. *Id*. at 65.  She also noted her shoulder impingement issue and her mastectomy and breast reconstruction surgeries, her hysterectomy, and her double hernia surgeries. *Id.* at 65-66.

The VE then testified. ECF Dkt. #11 at 72.  The ALJ asked the VE to assume a hypothetical person with the same age, education and work experience as Plaintiff who can perform sedentary work with limitations of: sitting for 5 minutes after every 1 hour of standing or walking; frequently stooping and balancing on uneven surfaces, but only occasional kneeling, crouching, crawling, climbing ramps or stairs; never climbing ladders, ropes or scaffolds; working in environments with only occasional vibration; and working in close proximity to a bathroom. *Id.* at 73-74.  The VE responded that such a hypothetical person could perform Plaintiff's past relevant work as an inside sales manager or a marketing manager. *Id.* at 74.

The ALJ added the additional limitation that the first hypothetical person would have to be able to lie down at least 4 times during the workday outside of normal breaks to relieve lower back pain. ECF Dkt. #11 at 75.  The VE responded that no work would be available for this hypothetical individual as the standard in the national economy that was tolerated was an employee missing less than 2 days per month and normal breaks were for 15 minutes twice per day and a lunch break. *Id.*

The VE also noted that the standard for an employee staying on task was for 85% of the workday, excluding breaks.  *Id.*

Plaintiff's counsel asked the VE about jobs available for the ALJ's first hypothetical person if the hypothetical person was also limited to sitting less than 2 hours in an 8-hour workday, and the VE responded that no work would be available for such a hypothetical person.  ECF Dkt. #11 at 76. The VE also responded that no jobs would be available for such a hypothetical individual if that person required 2 additional breaks per day in the same duration as the normal breaks.  *Id.*

## VII.    LAW AND ANALYSIS

### A.    Opinions of Treating Physician, Dr. Rozman

Plaintiff asserts that the ALJ violated the treating physician rule by failing to give good reasons for affording less than controlling weight and only "some weight" to the opinions of Dr. Rozman, her treating physician.  ECF Dkt. #13 at 8-13.

An ALJ must give controlling weight to the opinion of a treating source[3] if the ALJ finds that the opinion is well-supported by medically acceptable clinical and diagnostic techniques and not inconsistent with the other substantial evidence in the record.  *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  If an ALJ decides to discount or reject a treating physician's opinion, he must provide "good reasons" for doing so.  Social Security Rule ("SSR") 96-2p.  The ALJ must provide reasons that are "sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  *Id.* This allows a claimant to understand how her case is determined, especially when she knows that her treating physician has deemed her disabled and she may therefore "be bewildered when told by an administrative bureaucracy that [s]he is not, unless some reason for the agency's decision is supplied."  *Wilson,* 378 F.3d at 544 (quoting *Snell v. Apfel*, 177 F.3d 128, 134 (2d Cir. 1999)). Further, it "ensures that the ALJ applies the treating physician rule and permits meaningful appellate review of the ALJ's application of the rule."  *Id.*  If an ALJ fails to explain why he rejected or

---

[3]  The Court notes that the SSA has changed the treating physician rule effective March 27, 2017.  The SSA will no longer give any specific evidentiary weight to medical opinions, including affording controlling weight to medical opinions.  Rather, the SSA will consider the persuasiveness of medical opinions using the factors specified in their rules  and will consider the supportability and consistency factors as the most important factors.

discounted the opinions and how those reasons affected the weight afforded to the opinions, this Court must find that substantial evidence is lacking, "even where the conclusion of the ALJ may be justified based upon the record." *Rogers*, 486 F.3d at 243 (citing *Wilson*, 378 F.3d at 544).

The Sixth Circuit has noted that, "while it is true that a lack of compatibility with other record evidence is germane to the weight of a treating physician's opinion, an ALJ cannot simply invoke the criteria set forth in the regulations if doing so would not be 'sufficiently specific' to meet the goals of the 'good reason' rule." *Friend v. Comm'r of Soc. Sec.*, No. 09-3889, 2010 WL 1725066, at *8 (6th Cir. 2010). The Sixth Circuit has held that an ALJ's failure to identify the reasons for discounting opinions, "and for explaining precisely how those reasons affected the weight" given "denotes a lack of substantial evidence, even where the conclusion of the ALJ may be justified based upon the record." *Parks v. Social Sec. Admin.*, No. 09-6437, 2011 WL 867214, at *7 (6th Cir. 2011) (quoting *Rogers*, 486 F.3d at 243 ). However, an ALJ need not discuss every piece of evidence in the administrative record so long as he considers all of a claimant's medically determinable impairments and the opinion is supported by substantial evidence. *See* 20 C.F.R. § 404.1545(a)(2); *see also Thacker v. Comm'r of Soc. Sec.*, 99 F. App'x 661, 665 (6th Cir. 2004). Substantial evidence can be "less than a preponderance," but must be adequate for a reasonable mind to accept the ALJ's conclusion. *Kyle v. Comm'r of Soc. Sec.*, 609 F.3d 847, 854 (6th Cir. 2010) (citation omitted).

If an ALJ declines to give controlling weight to the opinion of a treating source, he must determine the weight to give that opinion based upon a number of regulatory factors. 20 C.F.R. § 404.1527(c)(2). Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source." *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 404.1527(c). An ALJ is not required to discuss every factor in 20 C.F.R. § 404.1527(c).

The ALJ reviewed and addressed Dr. Rozman's opinions in his decision. ECF Dkt. #11 at 25. He explained that he afforded less than controlling weight and only "some weight" to the opinions because Dr. Rozman provided little to no treatment notes to support his opinions and instead relied upon a check-box form with little explanation. *Id*. The ALJ also reasoned that Dr.

-18-

Rozman's opinions were not consistent with the objective medical records, including the January 7, 2015 lumbar spine x-rays showing only mild discogenic degenerative changes at L5-S1 with no spondylolisthesis or abnormal movement. *Id*. at 25, citing ECF Dkt. #11 at 538. The ALJ further cited to "good objective examination findings," such as normal reflexes, normal sensation, negative straight leg raising, ambulation without difficulty and normal lower extremity strength. Id. at 25, citing ECF Dkt. #11 at 529, 578, 593-594.

Plaintiff asserts that the ALJ failed to provide a good reason for attributing less than controlling weight to Dr. Rozman's opinions because his finding that Dr. Rozman provided little explanation to accompany the "check-box" form in which he presented his opinion was incorrect. ECF Dkt. #13 at 10-11. The undersigned recommends that even if this finding regarding Dr. Rozman's "check-box" form does not constitute a good reason, the Court should nevertheless find that the ALJ provided other good reasons for the weight that he attributed to Dr. Rozman's opinions. The ALJ properly found that neither Dr. Rozman's treatment notes nor the objective medical evidence supported Dr. Rozman's extreme limitations for Plaintiff. As the ALJ pointed out, the January 7, 2015 lumbar spine x-rays showed only mild discogenic degenerative changes at L5-S1 with no spondylolisthesis or abnormal movement. *Id*. at 25, citing ECF Dkt. #11 at 538. The ALJ also cited to the November 5, 2014 MRI of the lumbar spine showing only mild interval increase in moderate degenerative disc space narrowing and endplate change at the L4-L5 level and stable disc bulging and stable moderate left foraminal encroachment. ECF Dkt. #11 at 25, 518. Further, the ALJ cited to Dr. Rozman's February 24, 2015 and June 15, 2015 treatment notes documenting Plaintiff's complaints of severe back pain, but he noted that Dr. Rozman's physical examination findings did not correspond to Plaintiff's complaints of severe disabling pain or Dr. Rozman's extreme limitations for Plaintiff. ECF Dkt. #11 at 25, citing ECF Dkt. #11 at 592, 595. The February 24, 2015 notes of Dr. Rozman indicated only tender midline lower back tenderness and decreased range of motion for which he encouraged Plaintiff to continue with physical therapy, exercises and injections. *Id*. at 595. The June 15, 2015 notes made no findings concerning Plaintiff's lumbar spine upon examination. *Id*. at 592. The ALJ also referred to the notes of Dr. Louwers, Plaintiff's pain management specialist, who indicated on July 28, 2015 that Plaintiff's prior MRI

-19-

showed only mild facet arthropathy in the L3-5 range but no significant disc degeneration or foraminal impingement.  ECF Dkt. #11 at 24, citing ECF Dkt. #11 at 573.  The ALJ further noted Dr. Louwers' concern on July 28, 2015 that Plaintiff was on long-term opioids because she "has very little actual pathology in her spine."  ECF Dkt. #11 at 24, quoting ECF Dkt. #11 at 574.

Accordingly, while the ALJ's "check-box" reason may not have constituted a good reason for affording less than controlling weight and only "some" weight to Dr. Rozman's opinions, the undersigned recommends that the Court find that the ALJ's other reasons constituted good reasons for such a determination and these reasons are supported by substantial evidence.

Moreover, the undersigned recommends that the Court find that the ALJ considered the relevant regulatory factors in determining the weight to actually give to Dr. Rozman's opinions once he decided to attribute less than controlling weight to them.  20 C.F.R. § 416.927(c)(2).  Such factors include "the length of the treatment relationship and the frequency of examination, the nature and extent of the treatment relationship, supportability of the opinion, consistency of the opinion with the record as a whole, and the specialization of the treating source."  *Wilson*, 378 F.3d at 544, citing 20 C.F.R. § 416.927(c).  The ALJ noted that Dr. Rozman was Plaintiff's treating physician and as such, Dr. Rozman was able to personally examine Plaintiff.  ECF Dkt. #11 at 25.  He also considered the supportability and consistency of Dr. Rozman's extreme restrictions for Plaintiff as he cited to the mild objective test results and Dr. Rozman's own clinical findings that did not support and were not consistent with the extreme limitations.  *Id.*  For these reasons, the undersigned recommends that the Court find that the ALJ sufficiently considered the factors in 20 C.F.R. § 404.1527(c) when determining the weight to give to Dr. Rozman's opinions and substantial evidence supports that determination.

### B.    Opinion of Examining Physician, Dr. Cremer

Plaintiff also asserts that the ALJ erred by attributing only "some weight" to the opinion of Dr. Cremer, an independent medical examiner.  ECF Dkt. #13 at 13-14.  As an independent medical examiner, Dr. Cremer's opinion is considered as a nontreating source opinion under 20 C.F.R. § 404.1527(a)(2).  The factors of 20 C.F.R.§404.1527(c) are still considered in determining the weight to give nontreating source opinions.  *See* 20 C.F.R. § 404.1527(c)(every medical opinion will be

evaluated regardless of its source and factors in this section will be considered in deciding weight to give to any medical opinion); *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 373 (6th Cir. 2013). An ALJ is not required to explain why he favored one examining opinion over another as the "good reasons" rule requiring an ALJ to explain the weight afforded a treating physician's opinion does not apply. *See Kornecky v. Comm'r of Soc. Sec.*, 167 Fed.Appx. 496, 508 (6th Cir. 2006).

The ALJ considered Dr. Cremer's opinion in his decision. ECF Dkt. #11 at 25-26. In affording "some weight" to Dr. Cremer's opinion, the ALJ relied upon the same positive objective findings that negated Dr. Rozman's extreme limitations and the ALJ compared the inconsistency of Dr. Cremer's extreme opinion with the mild objective test results as to Plaintiff's lumbar spine. *Id.* He cited to the January 7, 2015 lumbar spine x-rays showing only mild discogenic degenerative changes at L5-S1 with no spondylolisthesis or abnormal movement. *Id.* at 25, citing ECF Dkt. #11 at 538. The ALJ also cited to the clinical examination findings of Dr. Rozman and the pain management doctor showing that while Plaintiff had moderate tenderness and tightness at the lumbar/sacral paraspinals, her straight leg raising was negative, she had normal sensation to light touch, normal bilateral lower extremity muscle strength and she could ambulate without difficulty. *Id.* at 25, citing ECF Dkt. #11 at 529, 577, 595. In addition, earlier in his decision, the ALJ cited to the notation of Plaintiff's pain management doctor who indicated his concern that Plaintiff was on long-term opioids when she had "very little actual pathology in her spine." *Id.* at 24, quoting ECF Dkt. #11 at 574.

The undersigned recommends that the Court find that the above reasons provided by the ALJ constitute sufficient reasons for his decision to afford "some" weight to Dr. Cremer's opinion and substantial evidence supports his decision to do so.

### C. RFC

Plaintiff also challenges the ALJ's RFC for her, asserting that substantial evidence does not support the RFC because the ALJ failed to consider specific medical records, including those that detracted from the RFC. ECF Dkt. #13 at 14-15; ECF Dkt. #15 at 3-4. The undersigned recommends that the Court find that the ALJ applied the proper legal standards and substantial evidence supports the ALJ's RFC for Plaintiff.

A claimant's RFC is an assessment of the most that a claimant "can still do despite [her] limitations." 20 C.F.R. §§ 404.1545(a)(1). An ALJ must consider all of a claimant's impairments and symptoms and the extent to which they are consistent with the objective medical evidence. 20 C.F.R. § 404.1545(a)(2)(3).  The claimant bears the responsibility of providing the evidence used to make a RFC finding.  20 C.F.R. §§ 404.1545(a)(3).  However, the RFC determination is one reserved for the ALJ. 20 C.F.R. §§ 404.1546(c); *Poe v. Comm'r of Soc. Sec.*, 342 Fed.Appx. 149, 157 (6th Cir. 2009) ("The responsibility for determining a claimant's [RFC] rests with the ALJ, not a physician."); SSR 96-5p, 1996 WL 374183, at *5.  Social Security Ruling ("SSR") 96-8p provides guidance on assessing RFC in social security cases.  SSR 96-8p.  The Ruling states that the RFC assessment must identify the claimant's functional limitations and restrictions and assess her work-related abilities on a function-by-function basis.  *Id*.  Further, it states that the RFC assessment must be based on *all* of the relevant evidence in the record, including medical history, medical signs and lab findings, the effects of treatment, daily living activity reports, lay evidence, recorded observations, effects of symptoms, evidence from work attempts, the need for a structured living environment and work evaluations.  *Id*.

Plaintiff first asserts that the ALJ determined a RFC for her that was not supported by the opinions of the state agency physicians or Drs. Rozman or Cremer. ECF Dkt. #13 at 14.  Defendant acknowledges that no physician specifically opined some of the limitations determined by the ALJ in Plaintiff's RFC.  ECF Dkt. #14 at 11.  However, as Defendant correctly points out, the ALJ determines the RFC and is not required to base his RFC on the opinion of any physician.  ECF Dkt. #14 at 12.  Although the ALJ considers opinions from medical sources in determining RFC, no special significance is given to such opinions on issues reserved to the ALJ, such as the RFC.  *See* 20 C.F.R.§ 404.1527(d)(2)-(3).  In formulating his physical RFC for Plaintiff, the ALJ properly attributed only "some weight" to the opinions of Drs. Rozman and Cremer based upon the lack of clinical findings and objective test results supporting such extreme limitations.  ECF Dkt #11 at 23-26.  The ALJ nevertheless attributed some credibility to Plaintiff's testimony and to the physicians' opinions as he limited her to sedentary work and only occasional kneeling, crouching, crawling, and climbing of ramps or stairs, but never climbing ladders, ropes or scaffolds, and close proximity to

a bathroom. *Id*. at 22. The state agency physicians had opined that Plaintiff could never climb ladders, ropes or scaffolds and she could occasionally climb ramps or stairs, and occasionally crouch and crawl. ECF Dkt. #11 at 88-89, 101-102. The ALJ also determined that Plaintiff needed to be placed in close proximity to a restroom at work based on her testimony that she has to use the restroom "three to four times a day" due to her diverticulosis. ECF Dtk. #11 at 22, quoting ECF Dkt. #11 at 62-64. While Plaintiff points out that no physician opined the ALJ's restrictions of sitting for 5 minutes after every hour of standing or walking, exposure to only occasional vibration, and Plaintiff's ability to frequently stoop and balance on uneven surfaces, the ALJ was not required to base his RFC on the RFC opined by the physicians as the ultimate determination rested with him upon his review of the medical and nonmedical evidence.

Plaintiff contends that the ALJ's RFC limiting her to sitting for 5 minutes after every hour of standing or walking is not consistent with the ALJ's finding that she is limited to sedentary work as this limitation is more consistent with light work. ECF Dkt. #13 at 15. Plaintiff correctly points out that light work "involves a good deal of walking or standing," and sedentary work involves "occasional[]" walking and standing. *Id*., citing 20 C.F.R. § 404.1567(a)-(b). However, the ALJ's limitation of 5 minutes of sitting after every hour of standing or walking does not specify the number of hours spent standing or walking per workday and thus does not intimate "a good deal of walking or standing," as light work is defined. Further, the VE concluded that the hypothetical individual with Plaintiff's background and RFC could perform her past relevant work and therefore the sitting limitation is not relevant to the finding that Plaintiff could return to her past relevant work. And finally, as Defendant points out, Plaintiff's counsel could have raised any conflict or inconsistency of this part of the RFC with light or sedentary work upon examining the VE, but he did not do so.

## VIII.  RECOMMENDATION AND CONCLUSION

For the foregoing reasons, the undersigned recommends that the Court AFFIRM the ALJ's decision and DISMISS Plaintiff's complaint in its entirety WITH PREJUDICE.


Date: January 31, 2018                         _/s/George J. Limbert_____
                                               GEORGE J. LIMBERT
                                               UNITED STATES MAGISTRATE JUDGE


ANY OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within fourteen (14) days of service of this notice.  Fed. R. Civ. P. 72; L.R. 72.3.  Failure to file objections within the specified time WAIVES the right to appeal the Magistrate Judge's recommendation.  *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).